# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| ENGAGE AVIATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | CIVIL ACTION<br><br>FILE NO. ________________ |

## COMPLAINT

Plaintiff, Engage Aviation, LLC, ("Engage") by its undersigned counsel, complains against the Republic of Argentina ("Argentina"), and alleges the following on its own knowledge, and otherwise on information and belief:

## PRELIMINARY STATEMENT

1. The essence of this case is as follows: Engage Aviation was attempting to sell an aircraft to Argentina for use by the Argentine president. Argentina desired a demonstration flight for its president to and from Columbia. Argentina agreed in writing to pay $764,189.00 to Engage Aviation for the demonstration if it ultimately did not purchase the plane. Argentina did not ultimately purchase the plane. The government of Argentina paid Engage only $241,770.13, via wire transfer to Engage's bank in Sarasota. Engage is owed the balance.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §1330(a). Argentina is a Foreign State, as contemplated by 28 U.S.C. §1603(a), which engaged in commercial activity, as defined by 28 U.S.C. §1603(d), causing a direct effect in the United States. Specifically, Argentina breached its contract with Engage, as discussed below, by failing to pay the full amount due via wire transfer to Engage's bank account in Sarasota, Florida. Argentina is not, therefore, entitled to jurisdictional immunity, pursuant to 28 U.S.C. §1605(a)(2).

3. In addition, this Court has personal jurisdiction because Argentina conducts business in the state of Florida; the Court will also have personal jurisdiction upon service of process pursuant to 28 U.S.C. 1608(a).

4. Venue is proper under 28 U.S.C. §1391(f).

## THE PARTIES

5. Engage Aviation, LLC is a Florida Limited Liability Company.

6. The Republic of Argentina is a Foreign State, as defined by 28 U.S.C. §1603(a).

## FACTUAL ALLEGATIONS

7. Engage is in the business of assisting clients in acquiring, marketing, selling, and leasing commercial aircraft. In some of its transactions, including the transaction at issue in this case, it acts as a middleman, purchasing a plane and then immediately selling it to Engage's customer.

8. In early 2016, Engage became aware that the government of Argentina was interested in acquiring a business jet for use as the official presidential aircraft. Argentina's previous presidential plane, a 757, was no longer serviceable and the President, Mauricio Macri, was therefore forced to either fly on commercial jets or hire charters.

9. The use of charter flights had previously garnered negative attention in the Argentinian press, when President Macri, during his election campaign, hired Unicos Air, a company owned by Diego Colunga, the son of Carlos Colunga, who for many years managed Macair, a charter jet company owned by the Macri family. Purchasing a business jet would help alleviate the concerns raised by the press, as well as provide other benefits.

10. Engage began coordinating with the local Airbus representative and went about sourcing a plane that fit the President's needs. In July of 2016, Philip Carey, CEO of Engage, inspected the former presidential 757 and informed the government, via letter, that he was interested in purchasing the 757. Engage hoped to incorporate taking ownership of the 757 into an eventual deal for a new presidential plane.

11. By August 19, 2016, Engage had identified a 2006 Airbus ACJ319 as the best available option. The plane was, and is, owned by a foreign conglomerate and is offered for sale through a Hong Kong-based company.

12. On August 22, 2016, Engage, through the local Airbus representative, submitted an offer to sell the ACJ319 to the government of Argentina for $39,900,000.00, and expressed willingness to assist with financing and an interest in taking the former presidential plane in trade. On information and belief, Engage's offer was sent to Carlos Cobas, a senior government official and a former general director/manager of Macair. The letter was addressed to Lic. Fernando de Andreis, Mr. Cobas's superior.

13. Because the ACJ319 was owned by a third party, other companies were also free to act as middlemen and offer the aircraft to the Argentinian government. Comlux, a Swiss-based company, did so. In late August or early September of 2016, Comlux offered the same 2006 ACJ319 to the government of Argentina for approximately $46,000,000.00. Comlux

represented that they were the owners of the aircraft. On information and belief, Comlux's offer was presented to Carlos Corbas, a senior government official and a former general director/manager of Macair. On information and belief, they were assisted by Diego and Carlos Colunga in their efforts.

14. On or about September 12, 2016, after Comlux's proposal had been submitted, Engage learned that only Comlux's offer had been presented to Mr. de Andreis, when Mr. de Andreis, by chance, happened to cross paths at a trade show with the local Airbus representative with whom Engage had been coordinating.

15. As a result of that encounter, on or about September 15, 2016, Engage's offer was presented in person by the local Airbus representative to President Macri and Fernando de Andreis.

16. Following that meeting, the Argentine government expressed a desire to purchase the plane, and requested that Engage arrange a demonstration flight for President Macri's trip to Cartagena, Columbia, to witness the signing of the peace accord between Columbia and the FARC.

17. The demonstration flight sought by Argentina entailed significant costs. The aircraft would have to be ferried (in industry terms, "positioned") from its home location in Singapore to Buenos Aires, staffed with crew and pilots, cleared for flight and landing, fueled, etc. As a condition of the demonstration, Engage required that Argentina pay all costs associated with the demonstration flight.

18. On September 21, 2016, a meeting was held between Airbus's local representative, a regional Airbus president, and Mr. de Andreis to discuss the potential purchase of the ACJ319 and the demonstration flight. During that meeting, Mr. de Andreis expressly

agreed that Argentina would pay the positioning costs, fuel costs, and the costs of the roundtrip presidential flight.

19. In reliance on Mr. de Andreis's assurances, Engage obligated itself to pay the aircraft's owners $484,320.00 for the positioning costs and ensured that the plane left Singapore on September 22nd, in time to be in Buenos Aires for an inspection by the government and for President Macri's trip to Columbia.

20. While the aircraft was en route from Singapore to Buenos Aires, Engage sent an invoice for the demonstration flight, as agreed. The Argentine government began to make excuses for why the invoice could not be paid (e.g., missing invoice number).

21. Engage became nervous that they would not be paid for the demonstration flight and, potentially, the sale. Mr. Carey's fears were confirmed when the Government informed them, via an intermediary, that they could only pay $250,000.00 immediately, and would have to find a "loophole" in order to pay any additional money.

22. Facing a substantial liability to the aircraft's owners, in or about September Engage submitted a new invoice. According to the terms of this invoice, Argentina would pay $250,539.00 for the President's roundtrip flight to Columbia, a non-refundable security deposit (to be credited against the purchase of the aircraft) of $200,000.00, and, if Argentina did not purchase the aircraft, $313,650.00 to position the aircraft back to Singapore. The latter two charges were set forth on the fourth and fifth pages of the agreement.

23. Later that same day, the government of Argentina returned only the first page of the invoice, signed by Leonardo M. Bellante, Director General de Administracion. Mr. Bellante is a direct subordinate of Jesus Acevedo, the Undersecretary of Coordination. Mr. Acevedo is a direct subordinate of Secretary General Fernando de Andreis, who reports directly to the

President. On information and belief, Mr. Bellante had the legal authority to enter into a contract on behalf of the government of Argentina. In the alternative, Mr. Bellante was the apparent agent of the government of Argentina.

24. On or about September 23, 2016, the government of Argentina wired $241,770.13 from an account in Buenos Aires to Engage Aviation's bank account in Sarasota, Florida. Mr. Acevedo emailed the local Airbus representative and acknowledged that the payment was approximately $9,000.00 short.

25. That same day, two different representatives of the Argentine government gave conflicting information about whether Argentina would, as promised, pay for the fuel needed for the President's flight. Ultimately, the government refused to pay.

26. Not wanting to lose the sale or be forced to cancel the demonstration flight, Engage agreed to pay for the fuel costs. However, by letter from Engage's COO, Christian Lang, to Mr. de Andreis, and copying, *inter alia*, Mr. Bellante (who signed the first page of the invoice previously), Engage informed the government that they would cancel the flight unless they had a completely signed invoice (the invoice required signatures on all five pages), and the balance of the initial $250,000.00 payment.

27. Mr. Lang received no response, so he sent a follow up email on September 26th, an hour before the scheduled departure for Columbia, to give the government one last chance to prevent the flight from being cancelled.

28. Jesus Acevedo then emailed a fully executed invoice to Mr. Lang and Mr. de Andreis, copying Mr. Bellante. A copy of the invoice is attached hereto as Exhibit A.

29. The contract, signed in direct response to Mr. Lang's email to Mr. de Andreis, was signed by Maria Lucia Bonetto, Deputy Affairs Coordinator of Mr. de Andreis's

department. On information and belief, Ms. Bonetto had the legal authority to enter into a contract on behalf of the government of Argentina. In the alternative, Ms. Bonetto was the apparent agent of the government of Argentina

30. The demonstration flight was a success, and President Macri expressed his approval of the aircraft. Despite this, no agreement was reached for the purchase of the aircraft, and on October 10, 2016, the aircraft was returned to its owners in Singapore.

**COUNT I – Breach of Contract**

31. Plaintiffs incorporate the preceding paragraphs into this Count.

32. The signed invoice attached as Exhibit A is a contract between Engage and Argentina.

33. Engage has substantially performed its obligations under the contract.

34. Pursuant to the terms of contract, if Argentina failed to purchase the ACJ319 offered by Engage, Argentina was obligated to pay Engage a total of $764,189.00.

35. Argentina materially breached the contract by paying only $241,770.13 to Engage.

36. Engage has repeatedly demanded that Argentina pay the remaining balance. Argentina has refused.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment granting the Plaintiff:

A. Compensatory damages in the amount of $522,418.87;

B. Prejudgment interest;

C. Costs of this suit;

D. Such other and further relief as the Court may deem just and proper.

DATED: March ~~6~~ 7, 2017

Respectfully submitted,

G. Robert McLain Jr.
Florida Bar # 0084475
Metcalfe & McLain, P.A.
107 S. Osprey Ave. Ste. 210
Sarasota, FL 34236
(941) 365-4174 (T)
(941) 366-4741 (F)
rob.mclain@metcalfemclain.com
***Counsel for Plaintiff***

ENGAGE



P.O. BOX 21595 SARASOTA, FLORIDA 34276-4595
TEL. 888 8ENGAGE >> 941 923 7474 >> FAX. 941 923 5667
ENGAGEAVIATION.COM

AIRCRAFT SALES + MARKETING

Company: Mr Carlos Cobas – Direccion General Logistica Presidencia de la Nacion Argentina

Date Quoted: September 21, 2016

Phone:

Fax:

Email: carlos.cobas@presidencia.gob.ar

Itinerary: SABE-KTEB

Invoice Ref. Number: 10-20-0823

Date of trip: Sep 26 – 26th 10:00AM Local

Aircraft: ACJ 319 MSN 2706 Tail: VP-BEX Pax: TBD

Buenos Aires, Argentina to Cartagena, Colombia EET: 0710
Cartagena, Colombia to Buenos Aires, Argentina EET: 0625

| | |
|---|---|
| 13.58 hrs | US$240,000 |
| Estimated International fees | US $10,539 |
| **Total** | US$250,539 |

Flights operated by Engage Aviation LLC and HK Jet Ltd

Name: MARIA LUCIA BONETTO Sign: [signature] Date: 26/9/16

By signing above, customer agrees to pay the full amount due under this agreement and understands and agrees to the above terms and conditions.

FAX: 941-9570101 PHONE: 941 - 957-0100



MARÍA LUCIA BONETTO
Subcoordinadora de Asuntos Presidenciales
Secretaría General
Presidencia de la Nación

Exhibit A

ENGAGE



AIRCRAFT SALES • MARKETING

P.O. BOX 21595 SARASOTA, FLORIDA 34278-4595
TEL. 888 8ENGAGE » 941 923 7474 » FAX. 941 923 5667
ENGAGEAVIATION.COM

Company: Mr Carlos Cobas – Direccion General Logistica Presidencia de la Nacion Argentina

Date Quoted: September 21, 2016

Phone:

Fax:

Email: carlos.cobas@presidencia.gob.ar

Itinerary: SABE-KTEB

Invoice Ref. Number: 10-20-0823

Date of trip: Sep 22 – 27th 18:30 UTC Aircraft: ACJ 319 MSN 2706 Tail: VP-BEX Pax: TBD

**Terms and conditions:**

The parties to this agreement are the "Customer" and "ENGAGE." Customer refers to the individual, company, or broker requesting the air charter services contemplated hereunder. ENGAGE refers to Engage Aviation LLC., a Florida corporation ID 20-3397804 and the party responsible for providing the air charter services described herein and in the quote attached hereto (the "Quote").

1) Quotes are subject to aircraft availability and other factors. The Quote will not become binding until confirmed in writing by ENGAGE. ENGAGE reserves the right to accept or decline any Quote received by Customer prior to confirmation.

2) The price set forth in the Quote is valid only for the itinerary listed on the Quote. Any deviation to the itinerary requires the prior approval of ENGAGE. In addition to Customer requested changes, ENGAGE may change an itinerary before or during any chartered flight in its sole discretion for safety reasons or for additional fuel stops due to weather, payload or other factors. Customer acknowledges that any change in itinerary will affect the amount payable by Customer.

3) All flights must be prepaid prior to the scheduled departure time set forth in the Quote by credit card or by wire transfer of immediately available funds in accordance with the instructions set forth below. The price quoted includes flight charges, landing fees, overnight charges, standard provisioning (including assorted beverages and snacks), and estimated fees and taxes. Extra charges for catering, ground transportation, flight phone usage, hangar, deicing and other services will be separately invoiced or charged to Customer's credit card after trip completion — all extra charges other than deicing and hangar fees will also be subject to a 15% handling fee. Extraordinary wear-and-tear and / or damage to the aircraft caused by Customer or any accompanying passenger(s) shall be the responsibility of Customer.

4) International fees, if applicable, are estimates only and may be higher than the amount set forth on the Quote. International fees will be charged to Customer at the higher of the estimated amount or actual cost and may be invoiced to Customer or charged to Customer's authorized credit card up to 120 days after completion of the trip.

5) After receipt of the signed Quote and payment by wire transfer, pre-paid funds or credit card, ENGAGE will confirm the trip in writing and send a trip itinerary to Customer. Upon delivery of the confirmation the trip is considered booked, at which time cancellation charges will apply per the terms and conditions contained herein.

6) Customer agrees to provide a complete passenger manifest for each flight segment with flight times at least 72 hours before scheduled departure, and understands that each passenger must present a valid government-issued photo identification to board the aircraft. If the trip is booked within 72 hours of the scheduled departure time, then the passenger manifest and flight times are required to be provided at the time of booking. Customer shall indemnify, defend and hold harmless ENGAGE for any liability associated with personal identification and/or security information furnished by Customer or any passenger. Customer agrees that ENGAGE will not be liable to Customer for any departure delays related to errors or omissions in the passenger manifest and passenger identification.

7) Peak Cancellation Policy: ENGAGE shall be entitled to delay or accelerate the requested departure time by up to 3 hours for all flight segments on days designated by ENGAGE as peak days (typically those days during the period commencing five days before, through two days after, a designated holiday). All flight cancellations for charters scheduled on peak days are subject to a cancellation fee equal to 100% of the total amount quoted at the time of booking. The peak days for 2015/2016 are as follows: Dec 23-31 (2015); Jan 1-5 and 14-18; Feb 11-15; Mar 24-28; May 26-30; Jul 1-5; Sep 1-5; Nov 21-28; Dec 23- 31; Jan 1-4 (2017)

8) Non-Peak Cancellation Policy Domestic flights on non-peak days that are cancelled within 72 hours (but more than 24 hours) of the scheduled departure time will be subject to a cancellation fee equal to 30% of the total amount quoted. Domestic flights on non-peak days that are canceled within 24 hours of the scheduled departure time will be subject to a cancellation fee equal to 100% of the total amount quoted. International flights on non-peak days that are canceled within 96 hours of the scheduled departure time will be subject to a cancellation fee equal to 100% of the total amount quoted regardless of when the trip is canceled.

Name: Maria Lucia Bonetto Sign: [signature] Date: 26/9/16

By signing above, customer agrees to pay the full amount due under this agreement and understands and agrees to the above terms and conditions.

FAX: 941-9570101 PHONE: 941 - 957-0100

MARÍA LUCIA BONETTO
Subcoordinadora de Asuntos Presidenciales
Secretaria General
Presidencia de la Nación

ENGAGE

P.O. BOX 21595 SARASOTA, FLORIDA 34276-4595
TEL. 888 8ENGAGE » 941 923 7474 » FAX. 941 923 5667
ENGAGEAVIATION.COM

AIRCRAFT SALES + MARKETING

Company: Mr Carlos Cobas – Direccion General Logistica Presidencia de la Nacion Argentina
Date Quoted: September 21, 2016
Phone:
Fax:
Email: carlos.cobas@presidencia.gob.ar
Itinerary: SABE-KTEB
Invoice Ref. Number: 10-20-0823

| Date of trip: | Sep 22 – 27th 18:30 UTC | Aircraft: | ACJ 319 MSN 2706 Tail: VP-BEX | Pax: TBD |
|---|---|---|---|---|

9) Generally Applicable Cancellation Terms: ENGAGE may cancel any trip with full cancellation penalty if Customer is more than 1 hour late for the scheduled departure time. If a flight is canceled or delayed due to security concerns caused by Customer or its passengers, the full cancellation penalty will apply. International fees incurred in preparation for any trip shall be charged regardless of when the trip is canceled.

10) Flights may be operated by ENGAGE or by another FAA-certificated Part 135 or Part 121 air carrier designated by ENGAGE (or another air carrier certified by the appropriate government authority for operations outside of the United States).

11) ENGAGE shall select the Fixed Base Operator ("FBO") at each airport on this itinerary. If Customer requests an FBO that is not a ENGAGE preferred FBO, a $500 surcharge may be imposed and, if invoiced by ENGAGE, will be payable by Customer upon receipt of the applicable invoice. For flights that require re-fueling or other technical stops before reaching the final destination, ENGAGE retains the right to select the refueling or other technical stop location for those flights.

12) ENGAGE does not transport any items classified as Hazardous Materials (HAZMAT) by the U.S. Department of Transportation, and such items are not permitted onboard any aircraft operated by ENGAGE. Please refer to http://hazmat.dot.gov for clarification of what items are considered HAZMAT, or direct any questions to your Customer service representative or flight crew.

13) The U.S. Transportation Security Administration prohibits the carriage of certain items onboard the aircraft. Please refer to http://www.tsa.gov for a complete listing of prohibited items. Please direct any questions to your Customer service representative or flight crew.

14) ENGAGE may but is not obligated to, examine all baggage and cargo. No article will be permitted on board the aircraft, either as baggage, cargo or otherwise, which in ENGAGE's sole opinion would endanger the safety of the flight, crew or passengers or would not be suitable for transportation on the aircraft.

15) ENGAGE (or its designee) has exclusive control over matters pertaining to the operation and safety of the flight, including but not limited to matters pertaining to the aircraft, crews, equipment and operational standards and controls applied by ENGAGE (or its designee) such as the weight, size, type, contents, and value of baggage or property to be accommodated.

16) ENGAGE may remove at any point any passengers or property who or which might involve a hazard or risk to passengers, crew, other persons or property or who or which is otherwise deemed unsuitable for transportation.

17) Broker Policy (applicable if booking is made by a person or entity other than the actual user of the air transportation to be provided under this agreement; such actual user is referred to herein as "Client" and such other person or entity is referred to herein as "Broker"): Broker warrants to ENGAGE that Client has appointed Broker as Client's duly authorized agent to contract for charter air transportation to be utilized by Client and Broker is authorized to enter into this agreement on behalf of Client, and (b) that Client is bound legally by and accepts the terms and conditions of this agreement, and (c) broker has delivered a copy of such terms and conditions to Client. Broker further warrants to ENGAGE that Broker is responsible for the collection and remittance of federal excise tax and segment fees and that in connection with the air transportation to be provided under this agreement Broker is in compliance with the USDOT Notice published on October 8, 2004 entitled "The Role of Air Charter Brokers in Arranging Air Transportation" (available at http://airconsumer.ost.dot.gov/rules/BrokerNoticeFinal.pdf). Broker shall be responsible for all amounts payable hereunder and for any failure by its Client to comply with these terms and conditions.

18) Limitation of liability a) EXCEPT AS SPECIFICALLY SET FORTH IN THIS AGREEMENT ENGAGE DOES NOT MAKE, GIVE, OR EXTEND ANY WARRANTIES, OBLIGATIONS, LIABILITIES OR REPRESENTATIONS OF ANY KIND OR NATURE, EXPRESS OR IMPLIED, ARISING BY LAW, IN CONTRACT, CIVIL LIABILITY OR IN TORT, OR OTHERWISE CONCERNING THE OPERATION OF ANY TRIP OPERATED BY ENGAGE OR ANY OTHER OPERATOR HEREUNDER, THE PROVISION OF ANY SERVICES HEREUNDER,, OR THE AIRCRAFT FLYING THE TRIP CONTEMPLATED HEREBY.
b) NEITHER ENGAGE NOR ANY OF ITS AFFILIATES, NOR ANY OPERATOR OF A CHARTER HEREUNDER SHALL BE LIABLE IN ANY EVENT TO CUSTOMER OR ANY OTHER PASSENGERS ON A TRIP FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES AND/OR PUNITIVE DAMAGES OF ANY KIND OR NATURE UNDER ANY CIRCUMSTANCES OR FOR ANY REASON INCLUDING ANY DELAY OCCASIONED BY THE

Name: Maria Lucia Bonetto Sign: [signature] Date: 26/9/16

By signing above, customer agrees to pay the full amount due under this agreement and understands and agrees to the above terms and conditions.



MARÍA LUCIA BONETTO
Subcoordinadora de Asuntos Presidenciales
Secretaría General
Presidencia de la Nación

ENGAGE



P.O. BOX 21095 SARASOTA, FLORIDA 34276-4595
TEL. 888 8ENGAGE » 941 923 7474 » FAX. 941 923 5667
ENGAGEAVIATION.COM

AIRCRAFT SALES • MARKETING

| | | | |
|---|---|---|---|
| Company: | Mr Carlos Cobas – Direccion General Logistica Presidencia de la Nacion Argentina | Date Quoted: | September 21, 2016 |
| Phone: | | | |
| Fax: | | | |
| Email: | carlos.cobas@presidencia.gob.ar | | |
| Itinerary: | SABE-KTEB | Invoice Ref. Number: | 10-20-0823 |

**Date of trip:** Sep 22 – 27th 18:30 UTC **Aircraft:** ACJ 319 MSN 2706 Tail: VP-BEX **Pax:** TBD

PERFORMANCE OR NONPERFORMANCE OF ANY SERVICES COVERED BY THIS AGREEMENT. c) THE PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT THE LIMITATION OF LIABILITY CLAUSE HAS BEEN EXPRESSLY AGREED TO FOR THE BENEFIT OF ENGAGE, ANY OPERATOR OF A FLIGHT HEREUNDER, AND EACH OF THEIR RESPECTIVE AFFILIATES AS IF EACH ARE PARTIES TO THIS AGREEMENT FOR SUCH PURPOSES. d) ENGAGE shall provide or cause to be provided liability insurance with respect to bodily injury or death to persons and the loss of or damage to property caused by air transportation operated by ENGAGE hereunder (collectively, "Losses") in an amount not less than $100,000,000 combined single limit per occurrence. IN ALL CASES, CUSTOMER AGREES THAT ENGAGE'S LIABILITY, OR THE LIABILITY OF ANY AFFILIATE OF ENGAGE, TO CUSTOMER OR CUSTOMER'S PASSENGERS SHALL NOT EXCEED THE AMOUNT PAID TO ENGAGE UNDER SUCH INSURANCE POLICIES WITH RESPECT TO ANY LOSSES INCURRED BY CUSTOMER OR ITS PASSENGERS EXCEPT TO THE EXTENT SUCH LOSSES ARE CAUSED BY OR DUE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ENGAGE OR ITS AFFILIATE. e) ENGAGE shall have no liability for delay or failure to furnish any or all of the services contemplated herein when such delay or failure is caused by circumstances beyond the reasonable control of ENGAGE, including but not limited to aircraft mechanical, weather, crew sickness or air traffic control delays. f) In the event of a cancellation of a confirmed charter flight by ENGAGE other than in connection with a Force Majeure or pursuant to Section 6 or 9 hereof, ENGAGE shall refund any prepaid amounts related to such trip to Customer and ENGAGE shall have no other liability or obligation with respect to such cancellation. •

Security deposit due on arrival at BA prior to dep. For Colombia US$200,000 In event of aircraft rejection, the security deposit will be forfeit and an additional positioning cost for return to Singapore will be due amounting to US$313,650

**Payment Options (please check one):**
**A CREDIT CARD MUST BE PROVIDED FOR ALL TRIPS, INCLUDING TRIPS PAID BY WIRE TRANSFER.**

Last four digits of credit card number: _______ Name on card: ________________

______ WIRE TRANSFER

Funds must be received two business days before the scheduled departure. Wire Instructions Bank:

| | |
|---|---|
| Name of bank: | Chase Bank |
| Address: | 2 N. Tamiami Tr'Sarasota, FL 34243. |
| For Domestic Wire Transfers: Use Routing Number | 021000021 |
| For International Wire Transfers: Use Swift Code | CHASUS33 |
| Account Name: | Engage Aviation LLC |
| Account Number | [redacted]850 |

If funds are not received by such deadline, I authorize ENGAGE to charge the credit card listed above in the amount agreed upon for air charter services. Charges will be charged to the credit card immediately. The credit card will be refunded to the extent ENGAGE receives payment of all charges by wire transfer. I understand and agree that if payment is not received within five days after completion of the trip, all charges will remain on the credit card.

Any additional charges payable hereunder including without limitation for catering, international fees, ground transportation, flight phone usage, overnight hangar expense, and deicing will be charged upon completion of trip to the credit card set forth above. Any charges incurred by ENGAGE at a later date, will be charged to the credit card when incurred. I authorize ENGAGE to charge such credit card for such additional fees.

______ CREDIT CARD

I authorize ENGAGE to charge the credit card listed above in the amount agreed upon for air charter services. Charges will be charged to the credit card immediately. Any additional charges payable hereunder including without limitation for catering, international fees, ground transportation, flight phone usage, overnight hangar expense, and deicing will be charged upon completion of trip to the credit card. Any charges incurred by ENGAGE at a later date, will be charged to the credit card when incurred.

Name: MARIA LUCIA BONETTO Sign: [signature] Date: 26/9/16

By signing above, customer agrees to pay the full amount due under this agreement and understands and agrees to the above terms and conditions

FAX: 941-9570101 PHONE: 941 - 957

MARÍA LUCIA BONETTO
Subcoordinadora de Asuntos Presidenciales
Secretaría General
Presidencia de la Nación

ENGAGE



P.O. BOX 21595 SARASOTA, FLORIDA 34276-4595
TEL. 888 8ENGAGE » 941 923 7474 » FAX. 941 923 5667
ENGAGEAVIATION.COM

AIRCRAFT SALES • MARKETING

**Company:** Mr Carlos Cobas – Direccion General Logistica Presidencia de la Nacion Argentina

**Date Quoted:** September 21, 2016

**Phone:**

**Fax:**

**Email:** carlos.cobas@presidencia.gob.ar

**Itinerary:** SABE-KTEB

**Invoice Ref. Number:** 10-20-0823

- **Note:** The ferry flight back Buenos Aires – Singapore fare cost will be $313,650USD that will be invoiced on separate document and must be paid after completion of Demo Flight Buenos Aires – Cartagena.

Name: Maria Lucia Bonetto  Sign: [signature]  Date: 26/9/16

By signing above, customer agrees to pay the full amount due under this agreement and understands and agrees to the above terms and conditions.

MARÍA LUCIA BONETTO
Subcoordinadora de Asuntos Presidenciales
Secretaria General
Presidencia de la Nación